**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

Vivian L. Medinilla
Judge

Leonard L. Williams Justice Center
500 North King Street, suite 10400
Wilmington, DE 19801-3733
telephone (302) 255-0626

Submitted: September 11, 2024
Decided: November 22, 2024

Jeffrey M. Weiner, Esquire
Law Offices of Jeffrey M. Weiner
1332 King Street
Wilmington, DE 19801

Joseph J. Bellew, Esquire
Joseph E. Brenner, Esquire
Gordon Rees Scully
Mansukhani, LLP
824 N. Market Street, Suite 220
Wilmington, DE 19801

Eric Scott Thompson, Esquire
Franklin & Prokopik
800 Creek View Road, Suite 300
Newark, DE 19711

Re:     **Reybold Venture Group VII, LLC and Reybold Construction Group, LLC v. ODA Architecture, PLLC, Overcash Demmitt Architects, PLLC, and Wave Engineering, PLLC**
<u>**C.A. No.: N22C-05-012 VLM**</u>

Dear Counsel:

On September 11, 2024, the Court held a remote hearing on Plaintiffs' Motion for Partial Summary Judgment. For the reasons stated below, Plaintiffs' Motion is **DENIED**.

## *Factual and Procedural Background[1]*

This case arises from a dispute over the design and implementation of an HVAC system in a lifestyle storage facility. On May 23, 2017, Plaintiff Reybold Venture Group VII, LLC ("RVG") and Defendant ODA Architecture, PLLC ("ODA") entered into a contract for engineering and architectural services for RVG's Lifestyle Storage Facility ('LSF") project.[2] Three months later, ODA subsequently subcontracted with Defendant Wave Engineering, PLLC ("Wave") on August 13, 2017, for mechanical, electrical, and plumbing engineering services for the same LSF project.[3] Defendants proceeded and prepared plans necessary for the construction of the LSF project.[4] Wave commenced its project design in October 2017 to the point of issuing permit drawings.[5] The project then sat dormant for

---

[1] Unless otherwise noted, this Court's recitation is drawn from Plaintiff's Amended Complaint (hereafter "Am. Compl.") and all documents the parties incorporated by reference. D.I. 3.

[2] *Id.* at 3; D.I. 7 at 1 (hereinafter "Def. ODA's Answer").

[3] Def. ODA's Answer at 2.

[4] Am. Compl. at 3.

[5] D.I. 118 at 16 (hereinafter "Pls.' Mot. for Partial Summ. J. Opening Br.").

nearly two years.[6]  Thereafter, building permits were issued in August 2019,[7] and Certificates of Occupancy were issued in July 2021.[8]

Upon occupancy, RVG experienced inadequate HVAC system performance issues and elevated humidity.[9]  RVG retained McHugh Engineering Associates ("McHugh") to review the HVAC system.[10]  On February 10, 2022, McHugh issued a report finding that Wave had oversized the HVAC equipment, which is manufactured by Trane,[11] that likely caused operational issues and lack of humidity control.[12]

On June 23, 2022, Plaintiffs filed an Amended Complaint alleging Breach of Contract (Count I) and Professional Negligence (Count II) against Defendants.[13]  On April 18, 2024, Plaintiffs filed a Motion for Partial Summary Judgment as to

---

[6] *Id.*

[7] During the construction of the HVAC system, Plaintiffs' HVAC contractor, East Coast Plumbing & HVAC, Inc. ("East Coast"), prepared submissions of 4 Split System with Electric heat based upon the equipment produced by Trane, allegedly based on Wave's M-101 drawing. On October 22, 2019, an engineer of Wave reviewed these submissions and acknowledged that each had been reviewed as noted for "general compliance with the intent of the Contract documents." *See id.*

[8] Am. Compl. at 3.

[9] *See* Pls.' Mot. for Partial Summ. J. Opening Br. at 5.

[10] Am. Compl. at 3.

[11] The report found that Wave had oversized the HVAC equipment by including an additional 1 watt/sq ft load (29.2 tons) that McHugh could not verify the origin of. *See* Pls.' Mot. for Partial Summ. J. Opening Br., at 5.

[12] *See id.* at 6.

[13] Am. Compl.

Liability against Defendants Wave and ODA.[14]  Wave oppose,[15] with ODA joining.[16]

Arguments were heard on September 11, 2024.  The matter is ripe for review.

### *Standard of Review*

The burden of proof on a motion for summary judgment under Superior Court Civil Rule 56 falls on the moving party to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[17]  If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[18]  Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[19]  "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[20]

---

[14] D.I. 114 (hereinafter "Pls.' Mot. for Partial Summ. J.").

[15] D.I. 120 (hereinafter "Def. Wave's Answer to Pls.' Mot. for Partial Summ. J.).

[16] D.I. 121.

[17] Super. Ct. Civ. R. 56(c).

[18] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3–4 (Del. 1995); *see also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[19] *Ebersole v. Lowengrub*, 180 A.2d 467, 469–70 (Del. 1962). *See also CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. June 8, 2015).

[20] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

***Discussion***

The elements of a breach-of-contract claim are "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[21]  Plaintiffs seeks partial summary judgment on the issue of liability for two reasons:  that it is undisputed that Wave oversized the HVAC system in its design,[22] and it further failed to notice during its review that Trane had changed the blower motor size.[23]  This, they say, establishes liability.

## A. Reason for Oversizing of the HVAC System is Question of Fact

Plaintiffs first argue that because it is undisputed that Wave oversized the HVAC system in its design, the interpretation of the calculation that resulted in the oversizing establishes liability.[24]  Wave contests this interpretation, arguing that their calculations were appropriate for a "permittable set of plans."[25]

---

[21] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[22] Plaintiffs contend that Wave oversized the HVAC system in its design by including an unjustified additional 1 watt/sq ft load for the entire 72,000 sq ft building, resulting in equipment approximately 60% larger than required by Code. *See* Pls.' Mot. for Partial Summ. J. Opening Br. at 6.

[23] Plaintiffs allege that the change in blower motor size caused shortened HVAC operational run times, HVAC system short cycling, and elevated humidity levels. *See id.* at 8.

[24] Plaintiffs support this claim with expert analysis from McHugh, which found a minimal difference of 0.7 tons between their calculations and Wave's, excluding the additional 1 watt/sq ft. *See id.* at 5-10.

[25] Def. Wave's Answer to Pls.' Mot. for Partial Summ. J. at 6.

Although perhaps there are some undisputed facts (*ex.* the addition of 1 watt/sq ft.), the appropriateness of this calculation in the context of professional engineering standards remains a genuine issue of material fact. Thus, Wave's assertion that decisions based on interpretations/calculations were within acceptable professional judgment creates a factual dispute that requires further examination by the factfinder.

### B. Change in Blower Motor Size is Question of Fact

Plaintiffs next argue that liability is established as a matter of law regarding Wave's failure to notice that Trane had changed the blower motor size.[26] Specifically, that documentation shows Wave reviewed the "equipment,"[27] and their responses included "Equipment Reviewed."[28] Plaintiffs argue these undisputed facts entitle them to summary judgment. Not so.

Wave acknowledges there was a change but contends that the responsibility for detecting such changes lay with other parties, including the construction manager, Trane, and the installation contractor.[29] Furthermore, Wave maintains that

---

[26] *See* Pls.' Mot. for Partial Summ. J. Opening Br. at 11.

[27] D.I. 124 at 10 (hereinafter "Pls.' Reply Br. in Supp. of Mot. for Partial Summ. J.").

[28] *Id.*

[29] *See* Def. Wave's Answer to Pls.' Mot. for Partial Summ. J. at 10-13.

their general note disclaiming responsibility for "equipment substitution" absolves them of liability.[30]

At the outset, whether the circumstances here fall within the scope of the disclaimer presents a genuine issue of material fact. The interpretation of Wave's responsibilities under their contract and professional standards—even considering their own documentation and disclaimers—presents factual questions that cannot be resolved at this juncture and must also be left to the factfinder. This, coupled with the allocation of responsibility of detecting equipment changes that involved other individual in the project, also precludes summary judgment.[31]

### *Conclusion*

Viewing in the light most favorable to the non-moving party, genuine issues of material fact exist as to whether the interplay of various factors, including design decisions, equipment changes, and installation practices contributed to the claimed inefficiencies alleged. Therefore, Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

Sincerely,
/s/Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[30] The general note also disclaims responsibility for "quantities or counts." *See* Def. Wave's Answer to Pls.' Mot. for Partial Summ. J. at 4-5.

[31] Wave has raised questions about other potential factors affecting system performance, including references to a "Green Roof" and the involvement of other contractors in the equipment selection and installation process. *See id.* at 2.

7